UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| KRISTY TRIMBLE, | ) | |
|---|---|---|
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 1:10-cv-26 |
| v. | ) | |
| | ) | Judge Mattice |
| THE IQ GROUP, THE INSURANCE HUB, INC., VINCE BONO, individually, and GRADY TUBBS, individually, | ) ) ) | |
| | ) | |
| *Defendants*. | ) | |

## **MEMORANDUM AND ORDER**

Before the Court is a Motion to Dismiss [Court Doc. 5] submitted by Defendants The IQ Group, The Insurance Hub, Inc., Vince Bono, and Grady Tubbs (hereinafter sometimes referred to collectively as "Defendants"). Defendants assert that all claims against them should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons explained below, Defendants' Motion to Dismiss [Court Doc. 5] will be **GRANTED IN PART** and **DENIED IN PART**.

## **I. STANDARD OF REVIEW**

As a preliminary matter, the Court notes that both parties have attached extrinsic materials to their pleadings, primarily letters from the U.S. Equal Employment Opportunity Commission ("EEOC") and letters and filings related to incorporation. *See, e.g.*, letters from the EEOC (Defs.' Mot. to Dismiss, Ex. 1 & Court Doc. 7, Pl.'s Respon. to Defs.' Mot. to Dismiss, Exs. A-B) or Secretary of State letters relating to incorporation (Defs.' Mot. to Dismiss, Exs. 2-3 & Pl.'s Respon., Exs. B-C). Defendants argue that "the court may consult matters of public record without converting the motion into a motion for summary

judgment." (Court Doc. 6, Memo. in Supp. of Defs.' Mot. to Dismiss, 2). Defendants are correct; the United States Court of Appeals for the Sixth Circuit has made clear that, although the usual rule is that matters outside the pleadings may not be considered in ruling on a motion to dismiss without converting it into a motion for summary judgment, there are exceptions. *J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 86-87 (6th Cir. 2007). Courts may consider, without converting the motion to one for summary judgment: "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Id*. (citing *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999). Therefore, the Court will treat the motion presently before it as one to dismiss without converting it to one for summary judgment.

Federal Rule of Civil Procedure 12(b)(6) provides an affirmative defense for a party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This defense is typically asserted as a motion to dismiss, where the movant challenges the sufficiency of claims set forth in a complaint. In *Ashcroft v. Iqbal*, the Supreme Court of the United States expanded on the holding in *Bell Atl. Corp. v. Twombly* by stating that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court clarified this statement by outlining the two "working principles" governing a motion to dismiss. *Id*. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Instead, a court considering a motion to dismiss should only accept that all factual allegations are true. Accordingly, "[w]hile legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

The second principle outlined in *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). The reviewing court must determine not whether the plaintiff will ultimately prevail but whether there is "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Therefore, to survive a motion to dismiss under 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Viewing the complaint in the light most favorable to Plaintiff and accepting as true all well-pleaded factual allegations, the relevant facts are as follows.

Plaintiff Kristy Trimble is a 31 year old white female who was formerly employed by Defendants The IQ Group and The Insurance Hub, Inc. (Court Doc. 1, Defs.' Notice of Removal, Ex. A Complaint ¶2, 6.) ("Compl.") Defendants The IQ Group and The Insurance Hub, Inc. are located in Hamilton County, Tennessee, with their company headquarters at 712 Mississippi Ave., Signal Mountain, Tennessee, 37377. (*Id.*, ¶3.) Defendant Vince Bono is the owner and agent for service of process for all corporate defendants, and "The IQ

Group" is a nationwide trade name or business alter ego used by him to market insurance services. (*Id.*, ¶4-5.) Plaintiff began working for Defendants on October 8, 2007, and was told she was doing a good job. (*Id.*, ¶6-7.) Sometime thereafter, Defendants Vince Bono, the company owner, and Grady Tubbs, her supervisor, began rubbing Plaintiff's shoulders near her breasts and her legs, touching Plaintiff's hair, attempting to look down her shirt, and using vulgar sexual language. (*Id.*, ¶¶8-9, 12-13.) Despite Plaintiff's requests for Defendants to stop and complaints to human resources manager Casey Chastain, Defendants did not stop their behavior and the company did not intervene on her behalf. (*Id.*, ¶9-10.) Plaintiff began trying to make herself less attractive by covering herself up with a blanket and wearing oversized clothes; Defendant Tubbs's response was to complain that these measures prevented him from seeing her breasts. (*Id.*, ¶14-15.) Defendant Bono asked Plaintiff repeatedly to sit on his lap, and Defendant Tubbs grabbed Plaintiff's underwear and "popped" them. (*Id.*, ¶¶16-17.) Plaintiff's complaint to human resources was ignored. (*Id.*, ¶17.)

On August 20, 2008, Defendant Bono asked Plaintiff to be promoted upstairs and to get on "the A-list." (*Id.*, ¶18.) Plaintiff declined because she had observed a promotion to the "A-list" was solely for the purposes of providing Defendant Bono with sexual favors. (*Id.*, ¶¶19-20.) When Plaintiff again complained to human resources manager Casey Chastain about the hostile work environment, Plaintiff was told that complaining further would cause her to lose her job. (*Id.*, ¶21.) Later during the same afternoon on which she refused the "promotion," she was falsely accused of stealing. (*Id.*, ¶22.) On August 23, 2008, Defendant Tubbs told Plaintiff that she should watch her step, and Plaintiff was fired

on August 26, 2008. (*Id.*, ¶¶23-24.)

Plaintiff filed a charge of discrimination with the EEOC on November 3, 2008, and the EEOC closed its file on the matter and informed Plaintiff of her right to sue on October 21, 2009. (Defs.' Mot. to Dismiss, Ex. 1; Pl.'s Respon. to Defs.' Mot. to Dismiss, Ex. A.) Plaintiff filed her Complaint in the Circuit Court of Hamilton County, Tennessee, on January 21, 2010, and it was removed by Defendants to this Court on February 4, 2010. (Defs.' Notice of Removal.)

Defendants filed the instant motion to dismiss on February 24, 2010. (Defs.' Mot. to Dismiss.) They contend that Plaintiff's THRA claims must be dismissed because THRA claims are subject to a one-year statute of limitations, which is not tolled by the filing of an EEOC administrative action, and that she failed to file her claims by August 26, 2009, when that limitations period lapsed. (*Id.*, ¶¶1-4.) Defendants further contend Defendants Bono and Tubbs cannot be sued in their individual capacity since neither Title VII nor the THRA create individual liability. (*Id.*, ¶5.) Finally, Defendants argue that because Plaintiff named only The IQ Group, Ltd. in her EEOC complaint, she is now limited by 42 U.S.C. § 2000(e)-5(f)(1) to suing only The IQ Group, Ltd.

### III. ANALYSIS

Because Defendants' arguments are grouped largely by the type of claim rather than by the type of defendant, the Court will address Plaintiff's THRA claims first, then Plaintiff's claims against the corporate Defendants, and finally Plaintiff's claims against the individual Defendants.

-5-

### A. Plaintiff's THRA Claim

Defendants assert that Plaintiff's THRA claim must be dismissed as time-barred. (Defs.' Mot. to Dismiss, ¶¶1-4.) Plaintiff's response on this point – "while the Tennessee Human Rights Act may have tolled, her rights under Title VII were not tolled" – is confusing. (Pls.' Respon. to Defs.' Mot. to Dismiss, 2.) Since the preceding sentences discussed how her EEOC actions were "timely filed," it seems as though Plaintiff substituted the word "tolled" for "expired," and thus was conceding Defendants' point that her THRA claims are time-barred. (*Id.*)

Regardless of whether Plaintiff conceded the point, Defendant is correct that the THRA claims are time-barred. The THRA provides relief via the right to file either an administrative complaint with the Tennessee Human Rights Commission ("THRC") within 180 days of the discriminatory practice or a direct suit within a year of the alleged discriminatory practice. *See* Tenn. Code Ann. § 4-21-302 and -401(d)(5); *see also*, *Conner v. City of Jackson, Tenn.*, 669 F. Supp. 2d 886, 890 (W.D. Tenn. 2009). If the THRC fails to schedule a hearing or issue an order within 180 days after the complaint is filed with it, the complainant may petition the chancery or circuit court in the county in which the discriminatory practice allegedly occurred. Tenn. Code Ann. § 4-21-307(c). But, "[t]he THRA's one year limitations period for bringing a direct court action is not tolled while administrative charges are pending with the THRC or the EEOC." *Martin v. Boeing-Oak Ridge Co.*, 244 F. Supp. 2d 863, 872 (E.D. Tenn. 2002) (citation omitted).

Plaintiff has not asserted that she attempted to or did file a claim with the THRC. The only possible evidence that she did so is the inclusion (on the EEOC Charge of

Discrimination Form) of "Tennessee Human Rights Commission" as the relevant state and local agency and the language "I want this charge filed with both the EEOC and the State or local Agency, if any" above her signature. (Defs.' Mot. to Dismiss, Ex. 1.) Regardless, because the statute of limitations is not tolled while any THRA claim is pending before the THRC and because she could have filed a direct action after 180 days of THRC inaction anyway, her THRA claim is subject to the one year statute of limitations governing the filing of direct suits. Since the last possible discriminatory or retaliatory action was her termination on August 26, 2008, Plaintiff had until August 26, 2009, to file her claim. Since she did not file her claim in state court until January 21, 2010, Plaintiff's THRA claims will be dismissed as time-barred.

### B. Plaintiff's Title VII Claims against the Corporate Defendants

Defendants claim that because Plaintiff named only The IQ Group, Ltd. in her EEOC complaint, she is limited to suing only that entity, and that The IQ Group was never her employer, so claims must be dismissed as against The IQ Group, Ltd. and The Insurance Hub, Inc. ("the corporate Defendants"). (Defs.' Mot. to Dismiss, ¶¶6-9.) Plaintiff responds that the corporate Defendants have made multiple efforts to obscure their true corporate identities, but that Defendant Bono is the one constant, as both owner and agent for service of process for all the companies and, thus, regardless of the precise legal identity that should have been named in the complaint, all Defendants are properly on notice. (Pl.'s Respon., 3.)

Defendants cite 42 U.S.C. § 2000e-5(f)(1) to support their contention that "only parties named in the EEOC Charge may be sued by the charging party." (Defs.' Motion to Dismiss, ¶8.) That section, however, provides no support for the Defendants' asserted

position. The relevant language:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . .

gives no indication that the "respondent named in the charge" shall be so strictly construed as to apply *solely* to a particular corporate entity. The Sixth Circuit has affirmed this liberal construction of this provision, saying that though the charge must be precise enough to identify sufficiently the parties and actions complained of so that the employer has sufficient notice and the EEOC can investigate the claims properly, "because aggrieved employees-and not attorneys-usually file charges with the EEOC, their pro se complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361-62 (6th Cir. 2010) (citations omitted). Plaintiff's EEOC complaint alleges facts, including the identity of Defendant, substantially similar to those alleged in the complaint.

Although Defendants may find Plaintiff's confusion regarding the various identities of the corporate entity that employed her "difficult to understand," the Court does not. Although the corporate filings attached to both Defendants' Motion to Dismiss and Plaintiff's Response are incomplete, even the filings that are present show that the corporation for which Plaintiff worked in Tennessee appears to have gone through at least five name changes, including going by "The Insurance Hub, Inc.," "IQ RX, Inc.," "The IQ Group," "Recession Buster Plan Administrator," and "MGA HUB." (Pl.'s Resp., Ex. B & C.) Defendants provided information only as to the name change to "The IQ Group," and

subsequent cancellation of that name change. (Defs.' Mot. to Dismiss, Ex. 3.)

Further, except for the Fed. R. Civ. P. 7.1 Corporate Disclosure statements, Defendants have not addressed the actual relationship between the corporations, even simply to deny Plaintiff's allegation that there was one. In her complaint, Plaintiff alleged that both corporate Defendants had the same address, that they were both owned by the same individual, that that individual, Defendant Bono, had direct control over, at a minimum, her promotion within the company, and finally that The IQ Group is a "nationwide trade name or business alter ego utilized by Defendant Vince Bono to telemarket insurance services." (Compl., ¶¶3-5, 18-22.)

These factual allegations are specific enough to survive a motion to dismiss, but their "facial plausibility," as required by *Iqbal*, is bolstered by the evidence in the corporate filings of significant instability in the identity of the corporate Defendants. Further, because Vince Bono was copied on the EEOC Dismissal and Notice of Rights Letter as Owner of the IQ Group at the address 712 Mississippi Ave., Signal Mountain, TN 37377, the same address used for him in his capacity as registered agent for The Insurance Hub, Inc./The IQ Group, there is no danger of unfair notice to any of the corporate Defendants. Therefore, the Defendants' Motion to Dismiss will be denied as to the Title VII claims against the corporate Defendants.

### C. Plaintiff's Title VII Claims against the Individual Defendants

Defendants claim that Plaintiff's claims pursuant to Title VII of the Civil Rights Act of 1964 must be dismissed against Defendants Bono and Tubbs ("the individual Defendants") because they cannot be sued in their individual capacity, since neither Title VII nor the THRA create individual liability. (Defs.' Mot. to Dismiss, ¶5.) Plaintiff responds

to this argument by asserting that Tennessee law, as announced by the court in *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 935 (Tenn. 1997), has found individual liability "under the common law theory of aiding and abetting" for harassment and discrimination claims. (Pl.'s Respon., 2.)

Plaintiff is mistaken in asserting that *Carr v. United Parcel Serv.* applies to her situation. As the court in that case – which was discussing THRA, not Title VII claims – made clear: "the THRA is broader than Title VII in terms of who may be held liable for harassment and discrimination." *Carr*, 955 S.W.2d at 835. As the Sixth Circuit has made clear: "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII. *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Therefore, only supervisors who would otherwise qualify as an employer may be held personally liable. Since Plaintiff has made no allegations, and since the records shows no evidence, that Defendant Tubbs would otherwise qualify as an employer, Plaintiff's Title VII claims against him fail. Since Plaintiff's THRA claims against him also fail, he will be dismissed from the case.

Since Plaintiff has made several claims, however, that Defendant Bono is the owner of the corporate Defendants and that they are essentially "alter egos" for him personally, the Court must consider whether he qualifies as an employer pursuant to Title VII. Although the Sixth Circuit has repeatedly reserved ruling on whether "a supervisor may be held liable [under Title VII] in his or her official capacity upon a showing that he or she could be considered the 'alter ego' of the employer," it has set forth standards for determining whether a particular supervisor can be considered to be the alter ego of the

employer. *Freshwater v. Mount Vernon City School Dist. Bd. of Educ.*, 2009 WL 4730597, at *4 -5  (S.D. Ohio Dec. 8, 2009) (reviewing the standard set in *Little v. BP Exploration & Oil Co.*, 265 F.3d 357 (6th Cir. 2001), and reviewing subsequent Sixth Circuit cases that had also reserved ruling on that question); *Little v. BP Exploration & Oil Co.*, 265 F.3d at 362 n. 2 (noting "[w]hile the law is clear that a supervisor cannot be held liable in his or her individual capacity for violations of Title VII, there is support for the proposition that a supervisor may be held liable in his or her official capacity upon a showing that he or she could be considered the 'alter ego' of the employer. This Court has not clearly and definitively ruled on this issue and we need not do so today.")

The standards which the Sixth Circuit cited with approval include showing that the supervisor Defendant "had significant control over Plaintiff's hiring, firing and working conditions such that he could be considered the 'alter ego' of [the Corporate Defendant].") *Little*, 265 F.3d at 362, n.2.  Similarly, the Sixth Circuit in *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 612 (6th Cir. 2003) said "[t]he determination of whether a particular entity is an employer of a Title VII plaintiff involves an examination of whether the alleged employer exercises control over the manner and means of the plaintiff's work." (citations omitted).

In this case, Plaintiff has alleged that Defendant Bono had direct control over, at a minimum, her promotion within the company and that her rejection of his advances lead directly to her termination. (*Id.,* ¶¶18-22.) Further, Plaintiff's numerous factual allegations regarding the nexus between the two corporate Defendants and Defendant Bono – that both corporate Defendants had the same address and were owned by the same individual,

Defendant Bono, who used The IQ Group as "nationwide trade name or business alter ego . . . to telemarket insurance services" – raise the reasonable inference that Defendant Bono exercised not only significant day-to-day control over her activities, but also significant control over her hiring, promotion, and termination. (Compl., ¶¶3-5.) Therefore, Plaintiff's factual allegations are sufficient to proceed against Defendant Vince Bono as an "employer" for the purposes of Title VII, and Defendants' Motion to Dismiss will be denied as to the Title VII claims against Defendant Vince Bono.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss [Court Doc. 5] will be **GRANTED IN PART** as to Plaintiff's sex-based discrimination and retaliation claims against all Defendants pursuant to the THRA, Tenn. Code Ann. §§ 4-21-101 to -401, and as to Plaintiff's sex-based discrimination and retaliation claims pursuant to 42 U.S.C. § 2000e against Defendant Tubbs.[1]

Defendants' Motion to Dismiss is **DENIED IN PART** as to Plaintiff's sex-based discrimination and retaliation claims pursuant to 42 U.S.C. § 2000e against Defendants The IQ Group, Ltd., The Insurance Hub, Inc., and Defendant Bono.

SO ORDERED this 27th day of September, 2010.

/s/Harry S. Mattice, Jr.
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

---

[1] The Parties and the Clerk shall omit Defendant Tubbs's name from all future pleadings and docket entries.